## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER KNOTT as Administrator of the Estate of APRIL KNOTT, deceased**<br>6749 Eylers Valley Flint Road<br>Sabillasville, MD 21780 | **CASE NO.:** _____ |
| *Plaintiff* | **CIVIL ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| **STANTON E. SOLLENBERGER, D.O.**<br>112 North 7th Street<br>Chambersburg, PA 17201 | |
| and | |
| **THE CHAMBERSBURG HOSPITAL d/b/a WELLSPAN CHAMBERSBURG HOSPITAL**<br>112 North 7th Street<br>Chambersburg, PA 17201 | |
| and | |
| **WELLSPAN HEALTH**<br>1001 S. George Street,<br>York, PA 17495 | |
| and | |
| **WELLSPAN MEDICAL GROUP**<br>45 Monument Road Suite 200<br>York, PA 17403 | |
| *Defendants* | |

## CIVIL ACTION – COMPLAINT

### I.    NATURE OF ACTION

1.    Plaintiff, Christopher Knott as Administrator of the Estate of April Knott, deceased, by and through his undersigned counsel, **Freidman Schuman Layser, P.C.**, brings the

following medical malpractice action against the above-named defendants as a result of an incident involving the healthcare of April Knott at The Chambersburg Hospital d/b/a WellSpan Chambersburg Hospital.

2.    As a result of the negligent acts and omissions of the defendants, April Knott suffered serious injuries, including untimely death, more fully described herein.

## II.    PARTIES

3.    Plaintiff, Christopher Knott, is the surviving husband and Administrator of the Estate of April Knott, deceased, and is an adult individual and citizen of the State of Maryland, residing at 6749 Eylers Valley Flint Road, Sabillasville, Maryland 21780.  Plaintiff, Christopher Knott, on behalf of the Estate of April Knott is seeking all monetary damages available under Pennsylvania's Wrongful Death Act and Survival Act Statutes.  Plaintiff, Christopher Knott, is the surviving husband and the Administrator of the Estate of April Knott, deceased, having been so appointed on March 18, 2024.  *See*, Letters of Administration attached hereto as **Exhibit "A."**

4.    April Knott (hereafter referred to as "Mrs. Knott"), now deceased, was born on April 6, 1960, and died on November 14, 2023.

5.    Defendant Stanton E. Sollenberger, D.O. (hereafter "Dr. Sollenberger"), is an individual and duly licensed practicing medicine at Chambersburg Hospital, with a business address at all times relevant hereto at 112 North 7th Street, Chambersburg, PA 17201.

6.    At all times relevant hereto, Dr. Sollenberger undertook to provide medical and rehabilitative healthcare and treatment services to Plaintiff's decedent, Mrs. Knott.

7.    At all times relevant hereto, Dr. Sollenberger was engaged in the practice of rehabilitation services pursuant to his specialty and was obliged to bring to bear in the practice of

2

his profession the professional skill, knowledge and care which he possessed and to pursue his profession in accordance with reasonably safe and accepted standards of medicine.

8.    Plaintiff is asserting a professional liability claim against Dr. Sollenberger.  A Certificate of Merit as to this defendant is filed with the Court, attached hereto as **Exhibit "B."**

9.    Defendant, The Chambersburg Hospital d/b/a WellSpan Chambersburg Hospital, (hereinafter referred to as "Chambersburg Hospital") is a Pennsylvania non-profit enterprise with offices located at, *inter alia*, 112 North 7th Street, Chambersburg, PA 17201 and at all relevant times was engaged in the provision of medical care and services to the public, including Plaintiff's decedent, Mrs. Knott, at that address.

10.    At all relevant times hereto, Chambersburg Hospital, and its affiliated health systems and/or physician practice groups, was acting by and through their actual, apparent or ostensible agents, servants and/or employees, including but not limited to Dr. Sollenberger, who themselves were acting at all times within the course and scope of their actual and/or apparent agency and/or employment with Chambersburg Hospital and under their exclusive control, and are liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, master-servant, agency, and right of control.  These agents acted or failed to act in the manner specifically described in the enumerated counts of this Complaint.  The identities of these agents, servants and employees are: and other physicians, graduate medical trainees (inters, residents and fellows), physician assistants, nurse practitioners, nurses, therapists, technicians and other medical and ancillary staff who attended to Plaintiff's decedent, Mrs. Knott, including those individuals whose names appear in the medical cart on those dates, but are indecipherable to Plaintiff, whose names are

3

only known to defendants and not known or knowable to Plaintiff after reasonable investigation, and/or whose names will require discovery from defendants.

11.     At all relevant times, Chambersburg Hospital employed physicians, graduate medical trainees (interns, residents, and fellows), nurses, physician assistants, nurse practitioners, therapists, technicians and other agents, servants, and employees, including, but not limited to, Dr. Sollenberger, who purportedly possessed skill and training for the purposes of providing medical care and services to the general public, and Plaintiff's decedent, Mrs. Knott in particular. The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of Plaintiff's decedent, Mrs. Knott as described herein, and whose acts and failures to act, described more particularly herein, increased the risk of harm and were substantial factors contributing to Plaintiff's decedent, Mrs. Knott's injuries and death.

12.     Plaintiff is asserting a professional liability claim against Chambersburg Hospital. A Certificate of Merit as to this defendant is filed with the Court, attached hereto as **Exhibit "C."**

13.     Defendant, WellSpan Health is a partnership, corporation, or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 S. George Street, York, PA 17495. At all relevant times was engaged in the provision of medical care and services to the public, including Plaintiff's decedent, Mrs. Knott, at that address.

14.     At all relevant times hereto, WellSpan Health, and its affiliated health systems and/or physician practice groups, was acting by and through their actual, apparent or ostensible agents, servants and/or employees, including but not limited to Dr. Sollenberger, who themselves

4

were acting at all times within the course and scope of their actual and/or apparent agency and/or employment with WellSpan Health and under their exclusive control, and are liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, master-servant, agency, and right of control. These agents acted or failed to act in the manner specifically described in the enumerated counts of this Complaint.   The identities of these agents, servants and employees are: and other physicians, graduate medical trainees (inters, residents and fellows), physician assistants, nurse practitioners, nurses, therapists, technicians and other medical and ancillary staff who attended to Plaintiff's decedent, Mrs. Knott, including those individuals whose names appear in the medical cart on those dates, but are indecipherable to Plaintiff, whose names are only known to defendants and not known or knowable to Plaintiff after reasonable investigation, and/or whose names will require discovery from defendants.

15.    At all relevant times, WellSpan Health employed physicians, graduate medical trainees (interns, residents, and fellows), nurses, physician assistants, nurse practitioners, therapists, technicians and other agents, servants, and employees, including, but not limited to, Dr. Sollenberger, who purportedly possessed skill and training for the purposes of providing medical care and services to the general public, and Plaintiff's decedent, Mrs. Knott in particular.   The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of Plaintiff's decedent, Mrs. Knott as described herein, and whose acts and failures to act, described more particularly herein, increased the risk of harm and were substantial factors contributing to Plaintiff's decedent, Mrs. Knott's injuries and death.

5

16.     Plaintiff is asserting a professional liability claim against WellSpan Health.  A Certificate of Merit as to this defendant is filed with the Court, attached hereto as **Exhibit "D."**

17.     Defendant, WellSpan Medical Group is a Pennsylvania non-profit corporation with administrative offices located at, *inter alia*, 45 Monument Road Suite 200, York, PA 17403 and at all relevant times employed physicians, nurses, physician assistants, and other healthcare providers who engaged in the provision of medical care and services to the public, including Plaintiff's decedent, Mrs. Knott.

18.     At all relevant times hereto, WellSpan Medical Group, and its affiliated health systems and/or physician practice groups, was acting by and through their actual, apparent or ostensible agents, servants and/or employees, including but not limited to Dr. Sollenberger, who themselves were acting at all times within the course and scope of their actual and/or apparent agency and/or employment with WellSpan Medical Group and under their exclusive control, and are liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of *respondeat superior*, master-servant, agency, and right of control.   These agents acted or failed to act in the manner specifically described in the enumerated counts of this Complaint.  The identities of these agents, servants and employees are: and other physicians, graduate medical trainees (inters, residents and fellows), physician assistants, nurse practitioners, nurses, therapists, technicians and other medical and ancillary staff who attended to Plaintiff's decedent, Mrs. Knott, including those individuals whose names appear in the medical cart on those dates, but are indecipherable to Plaintiff, whose names are only known to defendants and not known or knowable to Plaintiff after reasonable investigation, and/or whose names will require discovery from defendants.

6

19.     At all relevant times, WellSpan Medical Group employed physicians, graduate medical trainees (interns, residents, and fellows), nurses, physician assistants, nurse practitioners, therapists, technicians and other agents, servants, and employees, including, but not limited to, Dr. Sollenberger, who purportedly possessed skill and training for the purposes of providing medical care and services to the general public, and Plaintiff's decedent, Mrs. Knott in particular. The claims asserted against this defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees who participated in the care of Plaintiff's decedent, Mrs. Knott as described herein, and whose acts and failures to act, described more particularly herein, increased the risk of harm and were substantial factors contributing to Plaintiff's decedent, Mrs. Knott's injuries and death.

20.     Plaintiff is asserting a professional liability claim against WellSpan Medical Group.  A Certificate of Merit as to this defendant is filed with the Court, attached hereto as **Exhibit "E."**

21.     At all relevant times, a physician-patient relationship existed between Plaintiff's decedent, Mrs. Knott and defendants.

22.     At all relevant times, Plaintiff's decedent, Mrs. Knott, was under the medical and other professional care, treatment and attendance of defendants, directly or indirectly, through their agents, servants, and/or employees, who participated in her care as described herein.

23.     At all relevant times, defendants undertook and/or assumed a duty to Plaintiff's decedent, Mrs. Knott to provide her with timely and appropriate surgical and medical care, management and treatment in connection with her condition and to avoid the risk of harm, additional injury and her death

7

24.     At all relevant times, defendants had actual or constructive knowledge of the medical and professional care and treatment provided to Plaintiff's decedent, Mrs. Knott, as recited herein.

25.     The carelessness and negligence of defendants and each of them, jointly and severally, as described herein, increased the risk of harm to Plaintiff's decedent, Mrs. Knott and did, in fact, cause her to suffer injuries and ultimately, untimely death.

26.     As a direct result of the negligence of defendants and each of them, jointly and severally, as described herein, Plaintiff's decedent, Mrs. Knott failed to receive proper rehabilitative, post-operative care and treatment, evaluation, diagnosis, management, and treatment of her condition, and was exposed to an increased risk of harm, and was caused to needlessly suffer injuries, including her death, as described in her medical records.

27.     At all relevant times, Plaintiff's decedent, Mrs. Knott was under the medical care, treatment and attendance of defendants, their actual, apparent and/or ostensible agents and employees, as defined herein, all of whom were acting within the course and scope of their employment or agency with defendants, and under their right of control.

28.     At all relevant times, the individually named defendants, their agents, servants and employees were engaged in the practice of medicine, pursuing their specialties, and were obliged to bring to bear in the practice of their profession the professional skill, knowledge, and care that they possessed and to pursue their profession in accordance with reasonably safe and accepted standards of medicine and nursing, in general, and in their specialties, in particular.

29.     At all relevant times, Plaintiff's decedent, Mrs. Knott, relied on the knowledge, care, skill, treatment and advice of the defendants in connection with the medical and professional care and treatment provided to Plaintiff's decedent, Mrs. Knott.

4904-9486-0356, v. 1

30.     The grievous injuries of Plaintiff's decedent, Mrs. Knott, were caused by the negligence of defendants, and/or their agents, servants, and employees and were due in no manner whatsoever to any act or failure to act on the part of Plaintiff or Plaintiff's decdent, Mrs. Knott.

## III.    JURISDICTION AND VENUE

31.     Jurisdiction for this action is conferred on The United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1332 (a)(1).

32.     The amount in controversy exceeds seventy-five thousand dollars ($75,000) pursuant to 28 U.S.C. § 1332 (a).

33.     A jury trial is demanded.

34.     Venue is properly laid in the Middle District of Pennsylvania because the Estate was raised in Maryland, where Plaintiff lives, and the remaining witnesses and incident locations are all common to Franklin County.

## IV.    OPERATIVE FACTS COMMON TO ALL COUNTS

35.     On October 27, 2023, Mrs. Knott was admitted to York Hospital following an at home fall and sustaining a pubic ramus fracture of the pelvis. The fracture was treated conservatively.

36.     During her admission, she had significant hematuria and urinary retention, which was further complicated by a urinary tract infection. A Foley catheter was placed, and the infection was treated with a full course of antibiotics (Cefdinir).

37.     She was discharged from York Hospital on November 7, 2023.

38.      On the same day, November 7, 2023, she was admitted to defendant Chambersburg Hospital for inpatient orthopedic rehabilitation services.

9

39.    Mrs. Knott had a relevant medical history of stage three chronic kidney disease, restrictive lung disease and type II diabetes.

40.    Upon admission, she was evaluated by Dr. Sollenberger, who noted Mrs. Knott's prior care at York Hospital, and admission to defendant Chambersburg Hospital with an indwelling Foley catheter.

41.    Mrs. Knott's past history of severe vomiting from opioid medication, Morphine and Percocet, was documented in Dr. Sollenberger's initial assessment.

42.    Dr. Sollenberger's review of systems indicated Mrs. Knott had no cough, shortness of breath or wheezing. It was also noted that her pain level was seven (7) out of ten (10).

43.    Dr. Sollenberger's documented physical examination of Mrs. Knott revealed her pulmonary effort to be normal, with normal breath sounds. She was in no respiratory distress, and had no stridor, wheezing, rhonchi or rales.

44.    Mrs. Knott was awake, alert and oriented x3 and without evidence of aphasia or apraxia and with a normal cranial nerve examination.

45.    Dr. Sollenberger ordered physical and occupational therapy for three (3) hours per day, for five (5) days.

46.    Dr. Sollenberger anticipated Mrs. Knott's inpatient rehabilitation stay to last ten (10) days.

47.    Further, he expected Mrs. Knott to "make measurable improvement" over the ten (10) day admission, and regain her previous, independent functional capacity, with a discharge "to home at or near her previous level of functioning."

48.    Dr. Sollenberger did not document Mrs. Knott's ongoing hematuria.

10

49.    At approximately 5:40 p.m. on November 7, 2023, Dr. Sollenberger ordered Mrs. Knott be given a 3 mg Dilaudid suppository, and Methocarbamol and Flexeril for complaints of significant pain.

50.    Dr. Sollenberger improperly prescribed an opioid, Dilaudid, and two (2) muscle relaxers, Methocarbamol and Flexeril, to Mrs. Knott, who had a history of renal compromise and documented history of sensitivity to opioids.

51.    There is no indication Dr. Sollenberger ordered increased nursing monitoring after prescribing the opioid and muscle relaxants, despite Mrs. Knott's medical history and current medication list.

52.    Around midnight, Mrs. Knott was noted to be coughing, a symptom which indicated potential early signs of respiratory distress.

53.    Despite Mrs. Knott's coughing episode, following the administration of Dilaudid, Methocarbamol and Flexeril, there is no indication any orders were placed, including more frequent monitoring.

54.    At approximately 3:45 AM on November 8, 2023, a nurse found Mrs. Knott "lethargic, disoriented and hypoxic with a pulse ox of 62%." She had vomitus on her gown.

55.    Dr. Sollenberger documented in his Discharge Summary that Mrs. Knott was "unresponsive" which is a significant difference than "lethargic."

56.    At around 4:46 AM, an hour after Mrs. Knott was initially found unresponsive, intranasal Narcan was administered.

57.    Mrs. Knott aroused in response to the administration of Narcan, but was "very dyspneic and tachypneic. She complained of chest pain.

58.    There was a significant delay in the administration of Narcan to treat Mrs. Knott.

11

59.     Narcan was subsequently administered intravenously once an IV was established.

60.     Dr. Sollenberger ordered an urgent consult with Karina A. Henriquez, M.D. (hereafter "Dr. Henriquez").

61.     Mrs. Knott was transferred to the critical care unit of Chambersburg Hospital.

62.     At the time of transfer, Dr. Sollenberger documented Mrs. Knott's prognosis as guarded.

63.     Dr. Henrizuez's History & Physical noted Mrs. Knott had nausea and vomiting, and was placed on BiPap.

64.     Dr. Henriquez performed a physical examination of Mrs. Knott, and noted she had decreased breath sounds, bilaterally.

65.     Dr. Henriquez ordered an EKG which showed no change compared to previous EKGs.

66.     Hospitalist, Tyler Schmutzler, M.D. (hereafter "Dr. Schmutzler"), ordered a pulmonology consult and Mrs. Knott was evaluated by pulmonology nurse practitioner, David Everly, CRNP (hereafter "CRNP Everly").

67.     CRNP Everly's assessment was acute hypoxemic respiratory failure in the setting of drug-induced encephalopathy, and suspected aspiration pneumonitis.

68.     CRNP noted that during his examination of Mrs. Knott, she was "quite lethargic, unable to hold a conversation, without falling back asleep and…tachypneic."

69.     He administered 0.4 mg Narcan and noted that it had clinical effectiveness of approximately 30-45 minutes.

70.     CRNP Everly recommended Narcan infusion if she became somnolent again.

12

71.    He also noted that Mrs. Knott "likely aspirated during unresponsive episode," and recommended treatment for aspiration pneumonia.

72.    Dr. Schmutzler also ordered an infectious disease consult and Mrs. Knott was evaluated by Melissa Tiyouh, M.D. (hereafter "Dr. Tiyouh").

73.    In her consult note, Dr. Tiyouh noted that Mrs. Knott received Dilaudid for pain control, and "subsequently became altered associated with nausea, vomiting, cough, hypoxia."

74.    Per Dr. Tiyouh note, Mrs. Knott was on 4L of supplemental oxygen via nasal cannula.

75.    Dr. Tiyouh's impression was:

> **Altered status following Dilaudid administration, concerning for opiate induced neurotoxicity. Patient had episodes of nausea and vomiting, associated with hypoxic respiratory failure, high risk for aspiration…Symptoms may have been due to central nervous system (CNS) depression from the opiate.**

76.    Dr. Tiyouh recommended the following: repeat urinalysis with cultures; blood cultures; IV vancomycin and IV cefepime; and a CT scan of the chest.

77.    The CT scan of the chest, without contrast, dated November 8, 2023, revealed findings compatible with multifocal pneumonia.

78.    An x-ray of the chest was completed later that day and showed pulmonary fibrosis and patchy bilateral lung opacities suggestive of underlying pneumonia.

79.    No toxicology report and/or evaluation of medication levels were ordered.

80.    During the remainder of her admission, Mrs. Knott required periodic Narcan administrations to communicate.

81.    On November 11, 2023, Mrs. Knott's repeat EKG showed no changes.

13

82.     On November 12, 2023, Dr. Schmutzler ordered a portable chest x-ray which showed progression of multifocal airspace disease and ground glass opacities, which are signs of pneumonia.

83.     On November 13, 2023, Dr. Schmutzler ordered a repeat portable chest x-ray which again showed progression of bilateral lung opacities, and underlying mild congestive heart failure (CHF) was suspected.

84.     On November 14, 2023, the palliative service was consulted and a meeting held with Mrs. Knott's family to discuss her serious medical condition and continuing care options.

85.     Palliative Care nurse practitioner, Anita Ocker, CRNP (hereafter "CRNP Ocker"), noted that the family was aware that Mrs. Knott had "vomited and likely aspirated when she had the unresponsive episode in rehab, and this present pneumonia and difficulty breathing is due to that episode."

86.     CRNP Ocker noted that Mrs. Knott was on 6L of supplemental oxygen via nasal cannula.

87.     Approximately four hours later, Mrs. Knott passed away as a result of defendants' negligence.

88.     As result of defendants' combined negligence, Mrs. Knott was caused to endure tremendous physical pain and suffering, and untimely death.

89.     Defendants failed to properly review Mrs. Knott's medical history and risk factors before prescribing narcotics and muscle relaxants.

90.     Defendants did not take into consideration, Mrs. Knott's extensive medical history and her potential risk for aspiration, and they further did not properly monitor her condition after administering narcotics and muscle relaxants.

14

91.    When Mrs. Knott was experiencing an overdose, defendants failed to timely administer Narcan, increasing her risk of complications and death.

92.    The negligence of defendants and/or their agents, servants, and employees caused a significant delay in management and treatment of Mrs. Knott's medical care, causing her significant harm, injuries and death.

93.    The negligence of defendants and/or their agents, servants, and employees increased the risk of harm to Mrs. Knott and did, in fact, cause her to suffer catastrophic injuries and damages, and untimely death.

94.    The grievous injuries suffered by Mrs. Knott were caused solely and exclusively by the negligence of defendants and/or their agents, servants, and employees and were due in no manner whatsoever to any act or failure to act on the part of Plaintiff and/or Plaintiff's decedent, Mrs. Knott.

## V.    DAMAGES

95.    As a direct result of the treatment and care rendered by defendants, Plaintiff's decedent, Mrs. Knott suffered an untimely death.

96.    As a direct result of the recklessness and negligence and fault of all defendants, Plaintiff's decedent, Mrs. Knott, suffered the following damages, which were permanent and led to her untimely death:

        a.    untimely death;

        b.    aspiration pneumonia;

        c.    altered mental status;

        d.    confusion;

        e.    hypoxic respiratory failure;

15

f.      opioid overdose;

g.      respiratory depression;

h.      central nervous system depression;

i.      abdominal pain;

j.      chest pain;

k.      nausea/vomiting;

l.      delay in Narcan administration;

m.      sepsis;

n.      acute organ dysfunction;

o.      bilateral pneumonia;

p.      difficulty breathing;

q.      immense and horrific pain and suffering;

r.      physical, emotional and mental distress;

s.      mental anguish;

t.      financial losses to the estate;

u.      embarrassment;

v.      humiliation;

w.      fear of impending death;

x.      wage loss;

y.      medical expenses;

z.      incidental and other expenses;

aa.      economic damages;

bb.      loss of life's pleasures; and

cc.    other injuries and conditions documented in Plaintiff's decedent's medical records.

## COUNT ONE - NEGLIGENCE
**Plaintiff, Christopher Knott as Administrator of the Estate of April Knott, deceased v. Defendant, Stanton E. Sollenberger, D.O.**

97.    The previous paragraphs are incorporated herein as if set forth at length herein.

98.    The injuries to and death of Mrs. Knott were the direct result of the carelessness and negligence of defendant Dr. Sollenberger, which consisted of the following:

a.    failure to properly assess Mrs. Knott upon admission;

b.    failure to appreciate Mrs. Knott's medical history prior to ordering medication to treat her pain;

c.    failure to appreciate Mrs. Knott's current medication list;

d.    failure to appreciate Mrs. Knott's allergies to opioid medication;

e.    failure to appreciate Mrs. Knott's compromised renal function prior to prescribing opioids and muscle relaxants;

f.    failure to order non-opioid medication;

g.    failure to order alternative medication to Methocarbamol and Flexeril;

h.    erroneously ordering Dilaudid;

i.    erroneously ordering Methocarbamol;

j.    erroneously ordering Flexeril;

k.    erroneously ordering Dilaudid, Methocarbamol and Flexeril within a short period of time;

l.    erroneously ordering Dilaudid, Methocarbamol and Flexeril within a short period of time;

m.    failure to properly monitor Mrs. Knott after ordering Dilaudid, Methocarbamol and Flexeril;

n.    failure to increase the frequency of observation of Mrs. Knott after ordering Dilaudid, Methocarbamol and Flexeril;

17

o. failure to order increased observation of Mrs. Knott after ordering Dilaudid, Methocarbamol and Flexeril;

p. failure to appreciate Mrs. Knott's increased risk for opioid induced neurotoxicity when ordering Dilaudid, Methocarbamol and Flexeril;

q. failure to appreciate Mrs. Knott's increased risk for opioid overdose when ordering Dilaudid, Methocarbamol and Flexeril;

r. failure to appreciate Mrs. Knott's increased risk for respiratory distress when ordering Dilaudid, Methocarbamol and Flexeril;

s. failure to appreciate Mrs. Knott's increased risk for aspiration pneumonia when ordering Dilaudid, Methocarbamol and Flexeril;

t. failure to timely diagnose and treat Mrs. Knott's life threatening symptoms, including shortness of breath, nausea and vomiting;

u. failure to timely diagnose and treat Mrs. Knott's opioid overdose;

v. failure to timely diagnose and treat Mrs. Knott's respiratory distress;

w. failure to timely diagnose and treat Mrs. Knott's neurotoxicity;

x. failure to timely administer Narcan;

y. failure to timely diagnose drug induced encephalopathy;

z. failure to timely diagnose opioid induced neurotoxicity; and

aa. failure to recognize increased sensitivity to narcotic medication.

**WHEREFORE**, Plaintiff respectfully demands judgement in his favor against all named defendants, jointly, severally and/or individually in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other recoverable damages, where such an amount in controversy exceeds the jurisdictional amount subject to compulsory arbitration.

18

**COUNT TWO – NEGLIGENCE (VICARIOUS LIABILITY)**
**Plaintiff, Christopher Knott as Administrator of the Estate of April Knott, deceased v. Defendant, The Chambersburg Hospital d/b/a WellSpan Chambersburg Hospital, WellSpan Health, and WellSpan Medical Group ("WellSpan Defendants")**

99.    The previous paragraphs are incorporated herein as if set forth at length.

100.    The above-identified defendant is vicariously liable for the negligent acts and omissions of its actual, apparent and/or ostensible agents, including any individually named defendants, in connection with the medical care, evaluation, treatment and management provided to Plaintiff's decedent, Mrs. Knott, as described more fully above, which consists of one or more of the following:

a.    failure to appreciate the clinical significance of Mrs. Knott's medical history prior to prescribing medication;

b.    failure to appreciate the clinical significance of Mrs. Knott's current medication list;

c.    failure to timely administer Narcan;

d.    failure appreciate the clinical significance of Mrs. Knott's compromised renal function prior to prescribing narcotics and muscle relaxants;

e.    failure to properly monitor Mrs. Knott's symptoms after prescribing narcotics;

f.    failure to properly monitor Mrs. Knott's symptoms after prescribing muscle relaxants;

g.    failure to take appropriate steps to assess and/or reassess Ms. Knott's well-being after prescribing narcotics;

h.    failure to take appropriate steps to assess and/or reassess Ms. Knot's well-being after prescribing muscle relaxants;

i.    failure to timely, properly, and accurately recognize signs and symptoms of respiratory distress;

j.    failure to take timely and appropriate action and/or provide timely and appropriate care in response to Ms. Knott's symptoms following the administration of narcotics and muscle relaxants;

19

    k.   failure to recognize increased risk for aspiration;

    l.   failure to timely recognize and treat life threatening symptoms;

    m.  failure to properly assess Mrs. Knott upon admission;

    n.   failure to timely recognize and treat opioid overdose;

    o.   failure to recognize and appreciate the clinical significance of increased sensitivity to narcotic medication;

    p.   negligently allowing Ms. Knot's condition to deteriorate by mismanaging her care;

    q.   failure to follow clinical policies, procedures, and/or guidelines regarding the evaluation, diagnosis. Management, treatment, and/or care of a patient with Ms. Knott's specific clinical history; and

    r.   failure to follow clinical policies, procedures, and/or guidelines regarding the evaluation, diagnosis. Management, treatment, and/or care of a patient with Ms. Knott's specific symptomology.

101.    The foregoing negligence and carelessness of the WellSpan Defendants increased the risk of harm to Plaintiff's decedent, Mrs. Knott.

102.    As a direct and proximate result of the negligence of the above-identified defendants, as described herein, Plaintiff's decedent, Mrs. Knott, suffered catastrophic injuries described in this Complaint.

**WHEREFORE**, Plaintiff respectfully demands judgement in his favor and against all named defendants, jointly, severally and/or individually in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other recoverable damages, where such an amount in controversy exceeds the jurisdictional amount subject to compulsory arbitration.

4904-9486-0356, v. 1

## COUNT THREE - CORPORATE NEGLIGENCE
### Plaintiff, Christopher Knott as Administrator of the Estate of April Knott, deceased v. Defendant, The Chambersburg Hospital d/b/a WellSpan Chambersburg Hospital and WellSpan Health ("Corporate Defendants")

103.    The previous paragraphs are incorporated herein as if set forth at length herein.

104.    In addition to the derivative and vicarious liability of Corporate Defendants for the negligent acts and omissions of its agents, servants and employees, as set forth herein, Corporate Defendants owed direct and non-delegable duties to Plaintiff's decedent, Mrs. Knott, under the tenets set forth in *Thompson v. Nason*, 591 A.2d 709 (Pa. 1991) and its progeny of case law, including *Welsh v. Bulger*, 698 A.2d 581 (Pa. 1997) and *Whittington v. Woods*, 768 A.2d 1144 (Pa. Super. 2001).

105.    Corporate Defendants' duties included: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

106.    Corporate Defendants had a duty to its patients, such as Plaintiff's decedent, Mrs. Knott, to exercise reasonable care in the appointment and reappointment of physicians, interns, residents, fellows, nurses, physician assistants, nurse practitioners, technicians and other staff.

107.    Corporate Defendants owed a responsibility to its patients, such as Plaintiff's decedent, Mrs. Knott, to oversee its physicians, interns, residents, fellows, nurses, physician assistants, nurse practitioners, technicians and other staff to ensure that reasonable and competent medical care and services were rendered to its patients and to avoid conduct that would increase the risk of harm and/or in fact cause harm to patients.

21

108.    Corporate Defendants had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate care and medical and preventive treatment to its patients, such as Plaintiff's decedent, Mrs. Knott.

109.    The corporate negligence of Corporate Defendants, arising out of the care and treatment provided and/or negligently not provided to Plaintiff's decedent, Mrs. Knott, consisted of the following:

      a.    failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding administration of Narcan;

      b.    failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding prescription of narcotics;

      c.    failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding prescription of muscle relaxants;

      d.    failing to formulate, adopt and enforce adequate policies and procedures to ensure quality patient care, including written policies and procedures regarding aspiration risk assessment;

      e.    failing to have physicians, interns, residents, fellows, nurses, physician assistants, nurse practitioners, technicians and other staff appropriate in number, training, and/or experience to properly recognize and timely administer Narcan; and

      f.    failing to have physicians, interns, residents, fellows, nurses, physician assistants, nurse practitioners, technicians and other staff appropriate in number, training, and/or experience to properly examine a patient's medical history prior to prescribing medication.

110.    In violation of the standard of care, Corporate Defendants did not have adequate policies or procedures implemented during the entirety of Mrs. Knott's care, as described above, and/or if such policies were in place, Corporate Defendants failed to ensure that its physicians, interns, residents, fellows, nurses, physician assistants, nurse practitioners, technicians and other staff were aware of, familiar with and followed such policies.

22

111.    It is believed and therefore averred that Corporate Defendants knew or should have known that it did not have adequate written policies, personnel and procedures in place, as described above.

112.    The foregoing negligence of Corporate Defendants increased the risk of harm to Plaintiff's decedent, Mrs. Knott.

113.    As a direct and proximate result of the corporate negligence of Corporate Defendants, as described herein, Plaintiff's decedent, Mrs. Knott was deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management of her condition.

**WHEREFORE**, Plaintiff respectfully demands judgement in his favor against all named defendants, jointly, severally and/or individually in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other recoverable damages, where such an amount in controversy exceeds the jurisdictional amount subject to compulsory arbitration.

## COUNT FOUR - WRONGFUL DEATH ACT
**Plaintiff, Christopher Knott as Administrator of the Estate of April Knott, deceased v. All Defendants**

114.    The previous paragraphs are incorporated herein as if set forth at length herein.

115.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, brings this Wrongful Death Action on behalf of the Estate of April Knott, deceased, under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. § 8301, the applicable Rules of Civil Procedure and decisional law interpreting the Act.

116.    Under the Wrongful Death Act, April Knott, deceased, left surviving as her sole heirs-at-law, Christopher Knott, common law husband and Allison Wilt, daughter.   These

23

individuals, who have been notified of the commencement of this action, and are the beneficiaries entitled to recover damages under the Wrongful Death Act.

117.    As a result of the negligent acts and omissions of the defendants, as described more fully herein, Plaintiff's decedent, Mrs. Knott, suffered catastrophic, permanent, and fatal injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

118.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, claims the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

119.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, claims damages for the pecuniary losses suffered by reason of the death of Mrs. Knott, including, but not limited to, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by reason of the injuries which caused Mrs. Knott's untimely and tragic death.

120.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, claims damages for the loss of earnings, maintenance, support, comfort, care, society, guidance, tutelage and/or other losses recognized under the Wrongful Death Act, which the Wrongful Death beneficiaries would have received from Mrs. Knott had her death not occurred.

121.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, claims damages for the monetary support that the decedent could have been expected to provide to the Wrongful Death beneficiaries during her lifetime had her death not occurred.

4904-9486-0356, v. 1

122.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, claims the loss of the pecuniary value of the services which the decedent could have been expected to provide to the Wrongful Death beneficiaries during her lifetime had her death not occurred.

**WHEREFORE**, Plaintiff respectfully demands judgement in his favor against all named defendants, jointly, severally and/or individually in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other recoverable damages, where such an amount in controversy exceeds the jurisdictional amount subject to compulsory arbitration.

## COUNT FIVE - SURVIVAL ACT
### Plaintiff, Christopher Knott as Administrator of the Estate of April Knott, deceased v. All Defendants

123.    The previous paragraphs are incorporated herein as if set forth at length herein.

124.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, brings this Survival Action on behalf of the Estate of April Knott, deceased, under and by virtue of the Survival Act, 42 Pa. C.S.A. § 8302, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

125.    As a result of the negligent acts and omissions of the defendants, as described more fully herein, Plaintiff's decedent, Mrs. Knott, suffered catastrophic, permanent, and fatal injuries and death resulting in the entitlement to damages by the Estate of Mrs. Knott, deceased, under the aforementioned Survival Act.

126.    Christopher Knott, as Administrator of the Estate of April Knott, deceased, brings this action on behalf of the Estate to recover the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting the Act.

25

127.    On behalf of the decedent's Estate, Plaintiff claims damages for all economic losses to the decedent's Estate, including, but not limited to, the decedent's total estimated future earning capacity, less her personal maintenance costs.

128.    On behalf of the decedent's Estate, Plaintiff claims damages for the decedent's conscious physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable under the Survival Act and the decisional law interpreting the Act.

**WHEREFORE**, Plaintiff respectfully demands judgement in his favor against all named defendants, jointly, severally and/or individually in an amount in excess of the jurisdictional requirement to guarantee a jury trial, plus costs and delay damages, and such other recoverable damages, where such an amount in controversy exceeds the jurisdictional amount subject to compulsory arbitration.

## DEMAND FOR JURY TRIAL

129.    In accordance with the Federal Ruled of Civil Procedure, Plaintiff demands a trial by jury as to all counts and issues raised herein.

**FRIEDMAN SCHUMAN LAYSER, P.C.**

By:    _____
Derek R. Layser, Esq.
*Attorney for Plaintiff*

Date: <u>October 9, 2025</u>

26

## <u>CERTIFICAITON</u>

Under Federal Rule of Civil Procedure 11, by signing below, I, <u>Derek R. Layser</u>, attorney for Plaintiff, certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**FRIEDMAN SCHUMAN LAYSER, P.C.**

Date: <u>October 9, 2025</u>        By: _____

Derek R. Layser (Atty I.D. # 54938)
275 Commerce Drive, Suite 210
Fort Washington, PA 19034
P: 215-690-3817
E: dlayser@fsalaw.com
*Attorney for Plaintiff*

27

## **VERIFICATION**

I, Christopher Knott as Administrator of the Estate of April Knott, deceased, Plaintiff in the foregoing action, hereby verifies that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and/or belief.  I understand that false statements hereunder made are subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsifications to authorities.

Date:  October 9, 2025

CHRISTOPHER KNOTT
*Plaintiff*